**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA**

Civil Division

| | |
|---|---|
| **SHARI ACOSTA**<br>2860 South Meade Street<br>Arlington, VA  22206<br><br>   **PLAINTIFF**<br>   v.<br><br>**MICHAEL T. SPENCER**<br>441 Fourth Street, NW, Suite 1140B-North<br>Washington, DC 20001<br><br>   And<br><br>**DISTRICT OF COLUMBIA GOVERNMENT**<br>1350 Pennsylvania Avenue, NW<br>Washington, DC 20004<br><br>   *Serving:*<br><br>   **Honorable Muriel Bower**<br>   **Mayor of the District of Columbia**<br>   **1350 Pennsylvania Avenue, NW**<br>   **Washington, DC 20004**<br><br>   **Attorney General for the District of Columbia**<br>   **441 Fourth Street, NW, Suite 630S**<br>   **Washington, DC 20001**<br><br>   **DEFENDANTS** | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 1:20-cv-1189<br>) Jury Trial Demand<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

Comes now the Plaintiff, Shari Acosta, by and through her attorneys, and files this Complaint for violations of the District of Columbia Human Rights Act. D.C. Code Ann. § 2-1401 et seq. against Defendants, Michael T. Spencer ("Defendant Spencer") and the District of Columbia Government.

1

## JURISDICTION and VENUE

1. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1332.

2. Venue is proper in this court pursuant to 28 U.S.C. § 1391(b) in that the events giving rise to Plaintiff Acosta's claims occurred here in the District of Columbia and Defendants may be found here.

## PARTIES

3. Plaintiff Acosta is a 61 year old Caucasian female, single mother and grandmother, a citizen of the United States and a resident of the Commonwealth of Virginia. She has been a dedicated employee and public servant with the District of Columbia for over 18 years. She has received awards and commendations during her tenure as a Staff Assistant, including an Outstanding Customer Service Award from former Mayor Anthony Williams, DHCD Employee of the Month, and numerous outstanding performance appraisals during her successful career with the D.C. Government.

4. Plaintiff Acosta started her employment with the District of Columbia Government at the D.C. Office of Human Rights as an Intake Officer in 2001. She began working as a Staff Assistant with the Department of Housing and Community Development (DHCD) in 2002. DHCD is located at 1800 Martin Luther King, Jr., Avenue, SE, Washington, D.C. Although Plaintiff Acosta was an employee of DHCD, she was assigned since September 2011 to work at the D.C. Rental Housing Commission (RHC), which was considered part of DHCD in 2011. The RHC is an independent, quasi-judicial body with three Commissioners (with one of the three Commissioners appointed to be the Chairman of the Commission). All three Commissioners

are appointed by the Mayor of the District of Columbia. The RHC is located at 441 4th Street, NW, Washington, D.C. DHCD provided the RHC with administrative, budgetary, and programmatic support. The administrative support provided by DHCD included supplying support staff, such as Plaintiff Acosta, to the RHC. Besides the Chairman and the two other Commissioners, in 2011, the Commission staff included two Attorney Advisors, one Rental Housing Program Specialist, one Clerk of the Court, and one Contractor-Receptionist. DHCD had no oversight or authority over Defendant Spencer as he was not an employee of DHCD, and was appointed to the Commission by the Mayor of the District of Columbia, Muriel Bowser. The D.C. Council approved legislation that established the D.C. Rental Housing Commission to be an independent agency, effective October 1, 2019; and changed the official titles of the RHC Commissioners to be reflected as RHC Administrative Judges.. On October 1, 2019, the RHC no longer had any affiliation with DHCD at that time for any further administrative, budgetary, or programmatic support. Ms. Acosta was informed that she was no longer an employee of DHCD, despite the fact that no Standard Form 50 had ever been processed by DCHR in 2011, when Ms. Acosta was directed by DHCD management officials by virtue of an official memo that directed her to report to work at the RHC, without having any official DCHR order transferring her from DHCD's Office of Program Monitoring to the DHCD affiliated division at the Rental Housing Commission.

5. Defendant Michael T. Spencer is the Chairman of the Rental Housing Commission. Defendant Spencer is being sued in his individual capacity. The District of Columbia Government is a municipal government. All defendants are Plaintiff's employers within the meaning of the District of Columbia Human Rights Act.

## FACTUAL ALLEGATIONS

6. Plaintiff Acosta is a long term employee of the District of Columbia, since 2001, who suffers from a number of medical issues; and she is a caregiver for her five year old granddaughter (who suffers from behavioral issues). Plaintiff Acosta also provides substantial support to her daughter, who suffers from medical issues. In July 2017, Plaintiff filed an internal complaint with her then Agency (DHCD) against Defendant Spencer alleging: that he was abusive to her in the presence of her granddaughter on an occasion when she had her granddaughter with her while dropping off a leave request at the RHC office; and that he changed her work hours, placed on her on a performance improvement plan, and suspended her for five days without pay. Ms. Acosta filed Charges of Discrimination with the D.C. Office of Human Rights (OHR) against Defendant Spencer in December 2017 and January 2018.

7. In July 2018, she withdrew her D.C. OHR complaint, and filed a three count Complaint in the D.C. Superior Court against Defendants -- the District of Columbia Government and Michael Spencer -- alleging family responsibility and disability discrimination and a hostile work environment **(Count I)**; and retaliation **(Count II)** in violation of the District of Columbia Human Rights Act ("DCHRA"), D.C. Code § 2-1401, *et seq*. In addition, Plaintiff Acosta alleged Defendants interfered with her ability to take leave and retaliated against her for taking leave in violation of the District of Columbia Family Medical Leave Act ("DCFMLA") D.C. Code § 32-501, *et seq*. (Count III).

8. On July 13, 2018, DHCD Deputy Director Allison Ladd placed Plaintiff Acosta on a 120 day detail. The detail removed Plaintiff Acosta from her position at the RHC under the supervision of Defendant Michael Spencer, and returned Ms. Acosta to work at DHCD in their Development Finance Division ("DFD"). The detail was renewed for another 120 days in November, 2018 by Ms. Ladd, with an expiration date of March 26, 2019. Ms. Acosta

contacted Ms. Ladd in March 2019 approximately one week before the detail was due to expire for the second time, to get a renewal confirmation. Ms. Ladd indicated that she would get back to Ms. Acosta with more information. From March 2019 until July 19, 2019, Ms. Acosta was given no further information about her detail.

9. Ms. Acosta remained on the work detail at DHCD-DFD until July 19, 2019 performing vital Staff Assistant work under Managers Erin Wilson and Reshma Holla, who were both extremely pleased with her work. Ms. Acosta received an excellent mid-year evaluation from Ms. Wilson, and there was an extremely heavy workload for her to assist with. Two staff assistants in DHCD-DFD were out on extended leave (maternity and sick leave), so the managers were delighted to have her to assist with their work.

10. On July 19, 2019, Ms. Acosta was instructed to meet in person with DHCD Deputy Director Allison Ladd. During that meeting on July 19, 2019 (which was Ms. Ladd's last day of employment with the DC Government), she handed Ms. Acosta a memo indicating that she was ending her detail and returning her to the D.C. Rental Housing Commission, once again under the supervision of Defendant Michael Spencer -- the manager who had harassed her and retaliated against her after she filed her employment discrimination complaints against him. Ms. Ladd's memo indicated that she was giving Ms. Acosta only one week to make arrangements prior to the order of a move back to work at the Commission under Defendant Spencer. During that same meeting, Ms. Ladd handed Ms. Acosta a second memo, validating and confirming Ms. Acosta's complaint that Defendant Spencer had altered and falsified an official DC Government record (Ms. Acosta's 2016/2017 performance evaluation). Ms. Acosta had been communicating with Ms. Ladd for over a year concerning the fact that Mr. Spencer had falsified and altered her historical performance appraisal for the 2016/2017 rating

period, which had been appropriately completed by Ms. Acosta's supervisor of record for that review period, Peter Szegedy-Maszak. In January 2018, Ms. Acosta discovered that Mr. Spencer had been granted access to the PeopleSoft record system, which is the electronic payroll system for the D.C. Government that also contains performance appraisal reports for its employees. Former Chairman Maszak's comments were constructive and positive. Unbeknownst to Chairman Maszak or Ms. Acosta, Mr. Spencer altered Chairman Maszak's positive comments, causing anyone who viewed the performance review for that period to reasonably rely upon his unauthorized false comments as true. DHCR officials and Ms. Ladd acknowledged that Mr. Spencer was not authorized to alter and falsify the 2016/2017 performance appraisal.

11. Ms. Acosta's supervisors at DHCD-DFD (Ms. Wilson and Ms. Holla) were not consulted prior to the decision to remove Ms. Acosta from DHCD's DFD division, and they were shocked and displeased to realize that Ms. Acosta could be leaving the division when they were so short staffed. Ms. Acosta pleaded with Ms. Ladd; and asked her why, on her last day of employment, would she force Ms. Acosta back to the harassment and retaliation that she previously suffered in the hostile work environment at the Commission -- especially while the lawsuit involving Mr. Spencer was being actively litigated.

12. Ms. Acosta contacted DHCD Director Polly Donaldson and asked to meet with her to discuss this adverse decision. Director Donaldson and Interim Deputy Director Bekele refused to meet with Ms. Acosta to provide any information or discussion in connection with her urgent personnel matter. Ms. Acosta was instructed in Ms. Ladd's memo to direct all of her questions to Jacinda Miller, HR representative at DCHR. Ms. Miller provided some assistance initially. However, a few days after receiving Ms. Ladd's July 19, 2019 memo, Ms. Acosta was

unfortunately informed that Ms. Miller was out of the office until August 1, 2019. Ms. Acosta then contacted DHCD Interim Deputy Director Tsege Bekele to request his assistance in scheduling a meeting with Director Donaldson. Unfortunately, Mr. Tsege did not appropriately respond to Ms. Acosta.

13. Before her departure out of the office on August 1, 2019, Ms. Miller was able to make a request to DHCD management to modify the one week of paid administrative leave and extended it to two weeks of paid administrative leave - July 22 through August 2, 2019. Ms. Miller was also able to confirm that the agency would be honoring Ms. Acosta's pre-approved scheduled week of vacation time - August 5 through August 9, 2019. During that time, Ms. Acosta continued to make contacts and pleas for help up the chain of command to request assistance and protection to attempt to prevent a move back to the hostile work environment at the Commission. Ms. Acosta contacted the Deputy Mayor's Office for Planning and Economic Development and Council Member Anita Bonds' office -- asking both offices to intervene and assist in preventing a move back to the Commission under the management of Michael Spencer. Neither office was able to provide her with any assistance whatsoever.

14. Following Ms. Acosta's receipt of the July 19, 2019 email from Ms. Ladd, she became extremely ill from the stress and anxiety associated with being faced with the prospect of being returned to the torture and harassment that she had previously experienced at the DC Rental Housing Authority under the supervision of Defendant Spencer. Ms. Acosta received medical treatment and advice from her health care provider, Kaiser Permanente, on many occasions after July 19, 2019 for two very painful gallbladder attacks, and for high blood pressure, stress and anxiety. Ms. Acosta's Kaiser physician, Dr. Moghal prescribed for her to attend a Kaiser

Intensive Outpatient Program-IOP at Kaiser Behavioral Health for two weeks - August 5 through August 16, 2019.

15. Ms. Acosta sent an email with the VOT attached to Michael Spencer and Jacinda Miller on August 5, 2019, indicating that her doctor was ordering that she would not be able to work during the week of August 5 through 9, 2019 (already approved vacation); and that Ms. Acosta also would not be able to work during the week of August 12 through August 19, 2019 due to her illness, which was covered previously under FMLA protection. Ms. Acosta submitted a leave request in the PeopleSoft system requesting an additional week of leave (sick leave) for August 12 through August 19, 2019 per her doctor's orders to attend the additional week treatment program.

16. Mr. Spencer initially denied Ms. Acosta's leave request in the PeopleSoft system, thereby ignoring her doctor's medically-indicated orders. He also sent an email to Ms. Acosta on August 6, 2019 providing inaccurate information as to why he was denying her doctor-ordered sick leave. Mr. Spencer issued the denial despite the fact he had previously indicated to Ms. Acosta's union officials that he would be honoring her prior FMLA protection.

17. Following Mr. Spencer's denial of Ms. Acosta's request for leave for a doctor-ordered treatment plan, Ms. Acosta submitted a renewed FMLA application to DCHR representative, Jacinda Miller, following her return to the office. Ms. Acosta received approval of that FMLA by Ms. Miller, who is DCHR's FMLA coordinator. Ms. Miller notified Mr. Spencer of Ms. Acosta's FMLA approval, which was medically verified by Dr. Moghal. Mr. Spencer then reluctantly approved Ms. Acosta's leave request for the week of August 12 through August 16, 2019; and he made an attempt at explaining why he previously denied the leave request, despite the order from Ms. Acosta's doctor..

18. While Ms. Acosta was out on administrative leave, annual leave, and FMLA sick leave, she suffered from extreme adverse medical reactions due to the stress and anxiety she was experiencing because of the order to return to the unfair and torturous treatment that she experienced at the DC Rental Housing Commission under the supervision of Michael Spencer.  Mr. Spencer negatively affected Ms. Acosta's recovery from these stress-related illnesses by initiating contact via email, certified mail, and overnight priority mail.  He began sending these documents to Ms. Acosta from almost the very beginning of her leave, prior to Ms. Acosta submitting any leave requests in the PeopleSoft system.  He seemed unable to wait even during the one week of administrative leave before he resumed his campaign of harassment and retaliation towards Ms. Acosta.  Even though Ms. Acosta had been gone from the Commission since April of 2018 (and the Commission somehow functioned fine without her presence at 8:15 a.m. in the morning), Defendant Spencer sent her an email advising that when she returned to work at the RHC she would report to work at 8:15 a.m., which is 15 minutes before the Commission opens.  Plaintiff Acosta had previously filed a complaint against Defendant Spencer for changing her prior work schedule to an earlier arrival time (8:15 am).  Prior to being supervised by Defendant Spencer, Ms. Acosta had always requested and been granted a 9:30 start time, because she provided care for her granddaughter in the morning before taking her to daycare. In addition, her granddaughter's doctor had recommended that the granddaughter be allowed to sleep later in the morning because of her FLMA medical conditions.

19. The new tour of duty hours (starting at 8:15 am) once again interfered with Ms. Acosta's caregiver responsibilities which she needed to attend to in the morning for her now four year old granddaughter. Also, the earlier start time did not allow her enough time to get to work in

DC from Northern Virginia in heavy rush hour traffic following her care for her granddaughter in the morning and the drop-off at the child's daycare. Ms. Acosta had previously provided medical documentation that her granddaughter needed more sleep in the morning -- dictating the later arrival time at work.

20. Defendant Spencer once again changed Plaintiff Acosta's arrival time at work from 9:30 a.m. to 8:15 a.m. The 9:30 timeframe was a work schedule arrival time that she performed under with no problem whatsoever during her detail at DHCD-DFD from July 2018 to July 2019. Previously, in 2018, when Defendant Spencer changed her arrival time, he had gone so far as to call Plaintiff Acosta's day care several times, email them (without Plaintiff Acosta's permission). He also looked up and Googled Ms. Acosta's home address and the daycare's address. Defendant Spencer then sent an email to DHCD officials, a Union official, and Plaintiff's EEO officer which disclosed personal information about her granddaughter's daycare and her personal financial information concerning daycare payments, without her permission, which violated the privacy of Plaintiff Acosta and her family.

21. Plaintiff Acosta returned back to work at the RHC on September 30, 2019, and Defendant Spencer immediately targeted her for termination. As soon as she returned to work, Defendant Spencer took action to remove her from the Union. Two other RHC staff members, the Clerk of the Court at the Commission, LaTonya Miles, and an attorney who conducts confidential mediations at the Commission, D. Grier, were permitted by Defendant Spencer to remain in the Union, while Plaintiff Acosta was the only RHC support staff member who was removed from Union membership. As a justification for removing Plaintiff Acosta from the Union, Defendant Spencer claimed that she would have access to confidential and sensitive employee data and information relating to the Chairman's deliberations regarding employee and labor-

management issues (a task which Ms. Acosta had no training, skillset, or background needed to perform this high level task as a grade 11 Staff Assistant). When Plaintiff Acosta returned to work at the RHC, she did not perform any work that involved confidential and sensitive employee data and information relating to the Chairman's deliberations regarding employee and labor-management issues.

22. After Plaintiff Acosta returned to the RHC, Defendant Spencer revised her position description after she was removed from the Union and changed her grade from a Grade 11, Step 10 to a Grade 11, Step 0; and she was also classified as "Legal" and the classification of "career service" was removed from her record. Defendant Spencer also assigned Plaintiff Acosta the task of assisting and drafting Commission decisions, work that was above her pay grade and which was a task that was not appropriate for a non-lawyer without specialized legal training.

23. On October 7, 2019, after Plaintiff Acosta had returned from her work detail at DHCD, and had only been back at work at the RHC for approximately five days, Defendant Spencer issued her a counseling letter. The first unsubstantiated reason for the counseling letter included Defendant Spencer's unreasonable complaints about Plaintiff Acosta's use of the restroom (one single restroom use on the morning of October 3, 2019; which was related to her FMLA disability). Defendant Spencer inflated his complaint about this one instance of Plaintiff Acosta using the restroom into what appeared to be a major investigation wherein he required both Ms. Acosta and another RHC staff member (D. Grier) to write detailed "statements" about Plaintiff Acosta's use of the restroom. The second alleged reason that Defendant listed for the Counseling Letter was his complaint about Plaintiff Acosta turning the lights off in the Commission lobby at the end of her tour of duty, while leaving for the day, also on October 3, 2019.

24. On November 15, 2019, Defendant Spencer suspended Plaintiff Acosta for twenty days without pay for unsubstantiated reasons.  Defendant Spencer had previously provided Plaintiff Acosta with a lengthy confusing suspension letter, accompanied by hundreds of pages of disorganized "supporting documentation".  Plaintiff and her Attorney, David Branch, had requested an extension of time to file Plaintiff's response to the proposed suspension, due to the fact that Mr. Branch was on bereavement leave out of state at that time, due to the illness and death of his father.  Despite the fact that Plaintiff Acosta and Mr. Branch made a showing of good cause why they needed the additional time to prepare the response to the proposed 20 day suspension -- Mr. Spencer heartlessly and disrespectfully denied their request for additional time which they had made due to the bereavement time needed for Mr. Branch.

25. On November 22, 2019, while Plaintiff was not at work due to her 20 days suspension without pay, Defendant Spencer sent Plaintiff Acosta an email which conveyed yet another counseling memo.  The email sent on November 22, 2019 had four attachments.  The first attachment was a counseling memo (initially dated October 22, 2020.)  For unsubstantiated reasons, Defendant Spencer's memo to Ms. Acosta inappropriately contained two footnotes at the bottom of the first page which contained graphic descriptions of rape and sexual assault.  Defendant Spencer further continued his blatant attempt to bully and intimidate Ms. Acosta (while she was at home, not working) by including three additional attachments to his November 22, 2019 email communication (described as a "counseling letter").  The three additional attachments that Defendant Spencer included with his November 22, 2019 email were as follows: approximately 17 pages of scanned articles about R. Kelly, approximately 17 pages of scanned articles about Bill Cosby; and approximately 47 pages of articles about Harvey Weinstein.  It is apparent that with this bizarre and inappropriate email and attachments (which Defendant

Spencer described as a counseling letter), was yet another blatant and highly inappropriate attempt by Defendant Spencer to harass, intimidate, and potentially frighten Ms. Acosta to prevent her from exercising her rights to file workplace harassment and discrimination complaints against him.

26. Defendant Spencer placed Plaintiff Acosta on a Performance Improvement Plan on December 30, 2019. This Performance Improvement Plan ("PIP") was essentially the same identical PIP that he had placed her on in 2018. It was also the same PIP that was previously disputed by both her former AFGE Local Union 2725 Officials and DHCD Management Officials (Drew Hubbard and Allison Ladd). The prior PIP dispute and resulting meeting at the RHC, attended by Union Local 2725 officials and DHCD Management officials in March 2018, resulted in DHCD Deputy Director Allison Ladd ordering Plaintiff Acosta to be detailed out of the hostile work environment at the RHC, to a staff assistant position in the protected work environment at DHCD's Development Finance Division from July 2018 until July 2019).

27. On January 22, 2020, Defendant Spencer ordered Plaintiff Acosta to submit to medical and psychiatric fitness for duty examinations. Defendant Spencer specifically scheduled the psychiatric fitness for duty examination on January 29, 2020, which was Ms. Acosta's birthday, on a day which she had intended to take off work and spend her birthday with her five year old granddaughter. Defendant Spencer informed Ms. Acosta that she was not allowed to drive to the medical appointment scheduled for January 29 in her personal vehicle; and that he was insisting that she take the Metrorail to the appointment, which would have additionally required her to walk approximately four or five blocks to arrive at the doctor's office. He also required her to work until 11:30 am on the day of the appointment (scheduled at 1:00 pm that day at a location that was not close to their office). He assigned her so much work that had to

be completed that day with impossible deadlines, that she was forced to work until after 12:00 noon that day to complete the work. Ms. Acosta then had to take a cab to and from the appointment to arrive on time, to avoid further discipline from Defendant Spencer if she had arrived late. She also had to pay $40 out of her own pocket for round-trip cab fares to and from the appointment. Mr. Spencer had also informed her in an email that she was not entitled to take a lunch break on the day of the psychiatric appointment. The psychiatric fitness for duty examination notification was demanding that Plaintiff Acosta provide her Kaiser mental health records to a psychiatrist selected by Defendant Spencer (David J. Fischer, M.D.). Plaintiff Acosta declined to sign a release given to her by the psychiatrist on the advice of her attorney. Despite the fact that she did not sign a release, the Dr. Fischer completed a Psychiatric Fitness for Duty Evaluation and sent the confidential medical evaluation to Defendant Spencer. Defendant Spencer thereafter distributed the confidential medical report to an attorney at the RHC, Daniel Mayer, and also distributed the report to a hearing officer, Kamilah Oliphant – actions which were clear violations of HIPPA.

28. On February 21, 2020, Defendant Spencer issued Plaintiff Acosta an Advance Notice of a Proposed Termination. Defendant Spencer designated himself as both the Proposing Official and the Deciding Official. Defendant Spencer selected Attorney Kamilah Oliphant, an Assistant General Counsel at the Department of Behavioral Health, as a Hearing Officer. Ms. Oliphant copied another individual on her correspondence with Plaintiff Acosta and Defendant Spencer, thereby potentially again violating HIPPA. Defendant Spencer previously worked at the same Agency that Ms. Oliphant currently works at. Plaintiff Acosta, through counsel, sent Ms. Oliphant an email asking her to disclose her relationship with Defendant Spencer, and potentially recuse herself from further involvement in the proposed removal of Ms. Acosta.

Ms. Olphant declined to disclose any relationship with Defendant Spencer, and did not recuse herself from the role as a hearing officer in this matter.

29. On May 1, 2020, Ms. Oliphant issued an Administrative Review of Adverse Personnel Action supporting the removal of Ms. Acosta. Among the charges and findings were that: 1) Ms. Acosta made inconsistent statements related to a worker's compensation claim; 2) Ms. Acosta made unprofessional statements to a colleague, including stating "Thank you Alim. It's nice to work as a team;" 3) Ms. Acosta accused her supervisor of sexual harassment; and 4) Ms. Acosta was required to submit to fitness for duty medical and psychiatric examinations, and she failed to send medical releases to the providers.

30. Defendant Spencer sent an email to Plaintiff Acosta which contained a Final Agency Decision dated May 2, 2020 (one day after the Hearing Officer had issued her Administrative Review). Defendant Spencer advised Plaintiff Acosta that she was being separated from her 18-plus years of employment with the District of Columbia Government, effective May 7, 2020. Among the alleged reasons cited for her termination are: 1) she conducted herself in a manner prejudicial to the DC Government at the fitness for duty medical examination at Washington Occupational Health Associates, Inc. on February 3, 2020; 2) she made false sexual harassment claims against Defendant Spencer, and she made false statements to the District of Columbia Office of Risk Management and the Office of Employee Appeals; 3) she was unprofessional in her interactions with an RHC contractor, Al-Alim Musawwir, whom Plaintiff Acosta had accused of calling Plaintiff Acosta a "bitch", making offensive and potentially threatening comments about Plaintiff's daughter and five year old granddaughter, and telling Plaintiff Acosta that she had a body odor, and spraying Lysol in or around Plaintiff Acosta's workstation; 4) Plaintiff Acosta interrupted Defendant Spencer in a meeting on January 6, 2020

to ask about delayed approval by Defendant Spencer of an urgent leave request; and 5) Plaintiff Acosta made false statements about being assigned (as a non-lawyer, staff assistant with no official legal training) by Defendant Spencer to draft final decisions and orders, including findings of fact and conclusions of law for the RHC on two very complicated cases (one of which was four difficult cases combined) – seemingly asking Plaintiff Acosta to essentially practice law without a license.

31. The reasons given in the termination Final Agency Decision render Plaintiff Acosta unemployable by the District of Columbia Government, the Federal Government, and essentially any employer that conducts a background investigation. Therefore, Plaintiff Acosta, would be faced with the emergency situation no employment or income with which she could continue to support her and her family, as a single parent and grandparent.

## COUNT I

**Violation of the District of Columbia Human Rights Act
D.C. Code §§ 2-1401 *et seq.*
(Retaliation)**

Plaintiff Acosta re-alleges and incorporates by reference paragraph 1 through 31 above as if set forth fully herein.

32. At all pertinent times, Defendants were employers under the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 *et seq.*

33. At all pertinent times, Plaintiff is an employee entitled to protection under the District of Columbia Human Rights Act, D.C. Code §§ 2-1401 *et seq.*

34. The D.C. Human Rights Act prohibits an employer from taking action against an employee because the employee engages in protected activity and reports acts of discrimination.

35. Defendants, in violation of the D.C. Human Rights Act, knowingly and intentionally engaged in unlawful retaliation against Plaintiff for reporting discrimination. Specifically, Defendant Spencer: 1) changed Plaintiff's work schedule to require that she arrive at work at 8:15 a.m. and removed Plaintiff's position from a collective bargaining unit position; 2) issued her a counseling letter in November 2018 for use of the restroom one time and turning off lights at the end of the day as required; 3) counseled her for statements she made in Court in her discrimination case pending in the D.C. Superior Court; 4) suspended her for twenty days in November 2019; 5) issued her another counseling letter in November 2019 attempting to intimidate and frighten Plaintiff with graphic descriptions of rape and sexual assault during a time when she was not on active duty at work; 6) placed her on a Performance Improvement Plan in December 2019; 7) required her to submit to medical and psychiatric fitness for duty examinations in January 2020; 7) issued a notice proposing her removal in February 2020; and designated himself as the Deciding Official and appointed an attorney at his former place of employment (Department of Behavioral Health) as a Hearing Officer; and 8) issued a Final Agency Decision on Saturday, May 2, 2020 terminating Plaintiff's 18+ years of employment with the District of Columbia Government.

36. Defendants had no legitimate business reason for any such acts.

37. Plaintiff is informed and believes, and based thereon, alleges that, in addition to the practices enumerated above, Defendants may have engaged in other discriminatory practices that are not yet fully known.

38. As a direct and proximate result of Defendants' actions, Plaintiff Acosta suffered and continues to suffer, among other things, severe emotional distress requiring placement in an intensive mental health counseling program, humiliation, emotional pain, suffering, depression, embarrassment, anxiety, weight loss, headaches, vomiting, high blood pressure, and sleeping issues.[

**Prayer for Relief**

WHEREFORE, Plaintiff Shari Acosta prays as follows:

A.  That the court issue an Order declaring Defendants' actions to be a violation of the District of Columbia Human Rights Act, D.C. Code § 2-1401 *et seq.*, and declaring Plaintiff eligible to receive equitable and other relief;

B.  Enter judgment against the Defendants individually in an amount to be determined at trial, and no less than $5 million dollars against Defendant Spencer personally;

C.  Order Defendant District of Columbia Government to remove all disciplinary action taken against Plaintiff Acosta;

D.  Issue a permanent injunction prohibiting Defendants from terminating Plaintiff's employment and engaging in any discriminatory termination and retaliation; and reinstate Plaintiff as a D.C. Government employee to be returned to employment in a similarly situated position at DHCD or another appropriate D.C. Government agency, other than the D.C. Rental Housing Commission;

E.  Enter judgment in favor of Plaintiff against Defendants for all equitable monetary damages available under the law, including but not limited to back pay and front pay in amounts to be determined at trial;

  F. Reimburse Plaintiff for lost wages for 20 day suspension without pay, which occurred in November and December 2019;

  G. Reimburse Plaintiff for any annual leave that Plaintiff had to use (from 2017 to present day) due to stress or other related illnesses suffered due to Defendant Spencer's ongoing campaign of bullying, harassment, and retaliation; and reinstate sick leave that Plaintiff had to take for the same reasons; alternatively, sick and/or annual leave could be reinstated to Plaintiff's leave balance.

  F. Order Defendants to refrain from any retaliation against Plaintiff or any other person, for participating in or supporting this case in any manner;

  G. Order Defendants to pay compensatory damages in amounts to be determined at trial;

  H. Order Defendants to pay Plaintiff's reasonable attorneys' fees, expert fees and costs; and

  I. Order Defendants to pay pre-judgment and post-judgment interest as provided by law.

Respectfully submitted,

_/s/_
David A. Branch #438764
Law Offices of David A. Branch &
  Associates, PLLC
1828 L Street, NW, Suite 820
Washington, DC  20036
(202) 785-2805

## **Jury Trial Demand**

Plaintiff demands a jury trial on all claims against Defendants.